GEORGE A. MARDEN *vs.* CITY OF BOSTON.

Suffolk.    November 20, 1891. — January 7, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Insane Pauper — Widow — Settlement — Presumption of Death.*

Evidence that a pensioner of the United States left in 1867 the place where his wife and children and others of his relatives lived, and that they, as well as the authorities of the Pension Department, although making efforts to learn his whereabouts, never heard from him afterwards, is sufficient to warrant a finding that he died before January 1, 1881.

The Pub. Sts. c. 83, § 1, cls. 6 and 7, which relate to the gaining of settlements by women, include widows who have a settlement derived from their former husbands.

CONTRACT, by the Treasurer of the Commonwealth, to recover for the support of Catherine Callahan, an insane pauper, in a State lunatic hospital, from October 10, 1887, to September 30, 1889.

At the trial in the Superior Court, before *Dunbar*, J., it was agreed that Michael Callahan, husband of Catherine, acquired in 1864–65 a military settlement in the town of Westford; and that Catherine resided in the city of Boston without receiving aid as a pauper from January 1, 1881, to October, 1887.

The plaintiff's evidence tended to show that Michael and Catherine resided together in Boston from the time of their marriage in 1853 until about 1867; that Catherine continued to reside in Boston until October 10, 1887, when she was taken to the lunatic hospital and there supported by the Commonwealth; that Michael, after his discharge from military service, was granted a pension by the United States on account of disability incurred in such service; that in 1867 Michael left his home in Boston and his family, consisting of Catherine and several small children, and had not since been heard from, although efforts were made by Catherine, and by relatives of his residing in Boston, to learn of his whereabouts; and that the authorities in charge of the Pension Department had also been unable to ascertain where he' was, or to learn whether he was alive or dead, and had informed Catherine that, if she could

give them information as to when or where Michael died, the pension allowed to him would be granted to her.

The defendant asked the judge to rule, as matter of law, that the plaintiff could not recover, and to order a verdict for the defendant, on the grounds that the evidence was insufficient to warrant a finding that Michael Callahan was dead before January 1, 1881, and that Catherine, even if a widow, could not acquire a settlement in the defendant city. The judge refused so to rule, and submitted the case to the jury.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*T. W. Proctor*, for the defendant.

*J. C. Burke*, for the plaintiff.

KNOWLTON, J. The evidence in regard to Michael Callahan was sufficient to warrant a finding that he was dead. In 1867 he went away from Boston, where his wife and children and others of his relatives lived, and, although they have made efforts to learn his whereabouts, they have not heard from him since that time. He had previously made an application to the United States government for a pension, and a pension was granted to him; but the authorities in charge of the Pension Department at Washington have been unable to ascertain where he is, or whether he is dead or alive. These facts, with nothing to control the inferences naturally to be drawn from them, point to his death, and warrant a finding in favor of the plaintiff on this part of the case. *Loring* v. *Steineman*, 1 Met. 204, 211. *Flynn* v. *Coffee*, 12 Allen, 133. *Bowditch* v. *Jordan*, 131 Mass. 321, 323. *Stockbridge, petitioner*, 145 Mass. 517.

His widow, Catherine Callahan, continued to reside in Boston until October, 1887, and gained a settlement there by virtue of the Pub. Sts. c. 83, § 1, cls. 6 and 7. The first part of the seventh clause is as follows: " The provisions of the preceding clause shall apply to married women who have not a settlement derived by marriage under the provisions of the first clause, and to widows." The argument of the defendant, that widows who have a settlement derived from their former husbands, are not included, is untenable. They were included in the St. of 1874, c. 274, § 1, which is now the sixth clause above quoted, before the passage of the St. of 1879, c. 242, § 2, which is embodied in the seventh clause.

This last statute was passed after the decision in *Somerville* v. *Boston*, 120 Mass. 574, in which it was held that the St. of 1874, c. 274, § 2, did not apply to married women; and the purpose of it was to change the law in regard to married women, and to place them on the same footing in respect to the acquisition of a settlement as widows and unmarried women. It did not take away from widows any rights which had before been given them.

No other questions were raised at the trial, and it follows that the jury were rightly permitted to find that the husband of the pauper went away in 1867 and died; that his wife, Catherine Callahan, having become a widow, gained a settlement in Boston by five years' residence there, and that the defendant is liable for her support.                    *Exceptions overruled.*