**LILE v. SOVEREIGN CAMP, W. O. W.**
No. 12259.

Court of Civil Appeals of Texas. Dallas.

Dec. 19, 1936.

Rehearing Denied Jan. 18, 1937.

J. E. Gilbert and J. C. Muse, both of Dallas, for appellant.

Alvin H. Lane, of Dallas, for appellee.

JONES, Chief Justice.

This suit was instituted on May 10, 1935, in a district court of Dallas county, by appellant John C. Lile, duly appointed and acting guardian of Lila Mae Blanton, Wilburt Blanton, and Oma Lee Blanton, minors, to recover judgment, as such guardian, on an insurance certificate in the sum of $3,000, issued March 27, 1926, by the Sovereign Camp, Woodmen of the World. The case was tried to the court and judgment entered in favor of appellee denying any recovery. Appellant has duly perfected an appeal, and the following are the necessary facts:

The insurance certificate in suit was issued to Fred D. Blanton, deceased, and named Lizzie Blanton, his now deceased wife, as beneficiary. The said minors are the children of Fred D. Blanton and Lizzie Blanton. Fred D. Blanton was a contractor for jobs of painting, interior decorating and papering, and pursued his calling throughout Texas and adjoining states. When he had contracts for such work on large buildings, requiring several months to complete such work, his practice for several years had been to locate a home where such large contracts were being performed, and send for his wife and children, where they would live until another such contract in a distant place was made. In the fall and winter of 1926, he had a contract of such character in the city of Hot Springs, Ark., and he lived in that city with his wife and children until the contract was finished, which was in the spring of 1927.

In May, 1927, Fred Blanton left the home in Hot Springs to secure another contract, first stopping at Memphis, Tenn., but, finding no work there, he went to St. Louis, Mo. On May 16, 1927, he sent from St. Louis to his wife in Hot Springs the following telegram: "I am in St. Louis, Missouri. Nothing at Memphis but looks good here. Will write in a day or two. Lots of Dallas boys here. Scale $11.50. Will wire money soon by Sat. at least. Fred Blanton." This telegram was the last time his wife or any one else ever heard from Blanton, though diligent inquiry was pursued in an attempt to do so. At the time the telegram was sent to the wife the monthly dues provided for in the insurance contract had been paid, and, after such time, the monthly dues were paid by Blanton's brother-in-law up to September. On October 1, 1927, the policy by its terms lapsed for failure to pay the preceding monthly dues, and appellee declared a forfeiture.

At the expiration of the period of 7 years from the last date that Fred Blanton was heard from, Lizzie Blanton, in due form, presented proof of death on the statutory presumption of death because of an unexplained absence of 7 years. Payment was denied because of a provision in appellee's by-laws, made a part of the certificate, that will be discussed later, and shortly thereafter Mrs. Lizzie Blanton died. Guardianship proceedings were had in the probate court of Dallas county where Mrs. Blanton resided at the time of her death, and appellee was duly appointed guardian of the estate of the minors, and, as such guardian, had authority to institute this suit.

The trial court found that Blanton was a loving and affectionate husband and father, happy and contented in his home and surroundings, fond of his wife and children, a good provider for them, and domestic and home-loving in his nature and habits, and that Blanton has never been seen or heard from since the St. Louis telegram of May 16, 1927. These findings reflect the undisputed evidence, and are adopted as the findings of this court.

The court also made the following finding: "I find that the insured died about May 21, 1927, basing this finding solely on his unexplained absence from his home for over seven years and on article 5541, R.S. pertaining thereto."

The certificate of insurance provided in effect that it was issued and accepted subject to all of the conditions set forth in the certificate, and on the reverse side thereof; also that the articles of incorporation and the constitution, laws, and by-laws of the society and all amendments which may be

made thereafter, the application for membership and medical examination and the certificate issued, shall constitute the agreement between the society and the member. It was also provided that any changes, additions, or amendments to the articles of incorporation, or the constitution, laws, and by-laws of the society, made after the issuance of the certificate, should bind the member and his beneficiaries.

At the time of the issuance of the certificate and continuously thereafter, during the calendar year of 1934, there is contained in the by-laws paragraph 4 of section 57, which reads: "There shall be no liability upon this Association under any beneficiary certificate of membership in any case where a legal presumption of the death of such member arises from absence or disappearance until the full term of his life expectancy at the time he disappears, according to the Association's table of life expectancy, as set out in Section 158, hereof, has expired; and then only in case all assessments, dues, special assessments and all other sums, now or hereafter required under the laws of this Association be paid on behalf of such member within the time required until the expiration of the term of such life expectancy. In the event the payments are not made as above provided, said member shall stand suspended and cannot thereafter again become a member except in the manner as provided in the Constitution, Laws and By-Laws of this Association."

There are other provisions of the certificate and the constitution and by-laws, not found necessary to set out here. The court made the following conclusion of law: "I conclude that under the 4th paragraph of Section 57 of the Constitution and By-Laws of defendant association, defendant association and said Fred D. Blanton agreed at the time the policy sued upon was issued to him that death which could not be established in any other manner than by the legal presumption of death from seven years' unexplained absence, provided for in Article 5541, R.C.S. of Texas, was excepted from the risks insured against under said policy, and hence there is no liability against the defendant in this case."

The question for decision is, was the trial court correct in its construction of paragraph 4 of section 57 of appellant's by-laws?

It clearly appears that appellant, by the enactment of said paragraph 4 of section 57 of the by-laws, sought to create an exception from proof of death of an insured, by the presumption that such death occurred, by the 7 years' successive absence, without having been heard from, as allowed by the terms of article 5541, R.C.S. The portion of said article which concerns this case reads: "Any person absenting himself for seven years successively shall be presumed to be dead, unless proof be made that he was alive within that time." This article is a statutory recognition of a rule of evidence which obtains under the common law.

■ The deceased, Fred Blanton, secured this insurance for the protection of his family after his death. It was for the purpose of assisting the wife and mother to carry on the family burden that had been his during life. When death claimed the husband and father, the payment of his insurance matured. Under the finding of the trial court, Fred Blanton died about May 21, 1927. This finding, as explained by the trial court, is based upon his unexplained absence from his home for over 7 years, and the presumption of death decreed by article 5541, R.S. When we look to the evidence to see the habits and character of Blanton, we can account for his complete disappearance immediately after the telegram was sent to his wife from St. Louis, only on the theory that he was overtaken by death; hence the conclusion drawn by the trial court that he died a short time after he sent such telegram is the only consistent conclusion that can be drawn, and this court adopts the findings of the trial court in this respect.

Is the insurance provided for by Blanton, during his life time, to be denied, because no one can be found who witnessed the fact of his death? The Legislature, by the solemn enactment of article 5541, R.C.S., substitutes, under the facts of this case, the presumption of death for the testimony of eyewitnesses, and thereby decrees that the protection secured to his family by Blanton by the insurance certificate in suit is payable. Said paragraph 4 of section 57 of the by-laws declares that, in lieu of the statutory time of 7 years of unexplained absence, there must elapse the period of time equal to Blanton's life expectancy, according to appellant's mortality tables, before the presumption of death is conclusive. This expectancy is found by the trial court to have been 32 years, and during this time, almost one-third of a century, monthly payments must be made.

or the policy will be forfeited. This amounts to a denial of a payment of the amount of the policy. The question is: Shall the rule of evidence, as pronounced by the Legislature of this state, control, or shall the contract rule of evidence, decreeing that the policy shall be controlled by the terms of the by-laws of this society, control?

There is a conflict of authorities in the different states of the Union as to this question; some of the decisions holding that the by-laws, prescribing a different rule of evidence as to the presumption of death, are valid, and others holding to the contrary. Mr. Vance, in his work on Insurance (2d Ed.) p. 253, says: "Mutual benefits associations are confronted with a peculiar problem, due to the fact that their members are mostly of the working class and therefore often migratory in their habits. Frequent disappearances resulted in claims made by the beneficiary under the well-known common-law presumption that one who is absent and unheard of for a period of seven years is deemed to be dead. To protect themselves against the operation of this presumption, causing the payment of claims which, experience has subsequently shown, were often allowed while the insured was in fact still alive, benefit societies have generally enacted by-laws variously worded and intended to evade the presumption. In some instances the by-law merely declares that absence, however long continued, shall not alone be sufficient evidence of death. Others provide that the society will not be liable upon proof of absence of the insured unless the absence shall have extended for a period equal to his life expectancy. In treating the authorities dealing with the operative validity of such by-laws, it is necessary to make a sharp distinction between those jurisdictions in which the presumption referred to exists only as a common-law rule of evidence and those in which it is declared by statute. In the former states, it is very generally held that previously enacted by-laws are valid, although there is some authority opposing this view. On the other hand, when the rule of evidence is declared by statute, it is held that the by-law attempting to abrogate it is void."

■ 45 Corpus Juris, p. 15, under the subject of "Presumptions of Death From Absence," declares the rule, where the contract declares a different rule from that prescribed by statute, to be as follows: "In jurisdictions where the statutes make ab-sence for a stated period presumptive evidence of death, it has been held that a condition in a contract of benefit insurance that the absence or disappearance of the injured member for any length of time, shall not be evidence of his death nor give the beneficiary any right to recover, before the expiration of the full term of the member's life expectancy, is void, not only as an agreement in violation of statute, but also as unreasonable and against public policy, whether such condition was in the contract as originally made or in an after-enacted by-law which the member had agreed in advance to abide by. On the other hand, in jurisdictions where the common law rule in respect of the presumption of death from absence has not been embodied in a statute, it has been held that, since the rule is one of evidence only, the parties may by contract change the rule, and hence that a provision that the absence or disappearance of insured without proof of actual death shall not entitle his beneficiary to recover, or that no recovery shall be had until the full term of life expectancy has expired, is valid, even though contained in a subsequently enacted by-law, if the member agreed to abide by subsequent laws."

In both the quoted texts, from Vance on Insurance and Corpus Juris, the authors of the texts quoted support the announcement by the citation of numerous authorities in the footnotes. So, when the common-law rule, in respect of the presumption of death from absence, has been embodied in a statute, as in our state, it ceases to be a mere rule of evidence and becomes a rule of law, fixing the public policy of the state in respect thereto, and any contract entered into, prescribing a different rule of law to govern, is invalid and unenforceable. Sovereign Camp, W. O. W., v. Piper (Tex.Civ.App.) 222 S.W. 649 (writ of error refused); Supreme Ruling of F.M.C. v. Hoskins (Tex.Civ.App.) 171 S.W. 812 (writ of error refused); Sovereign Camp, W. O. W., v. Robinson (Tex.Civ.App.) 187 S.W. 215; Supreme Lodge, K. P., v. Wilson (Tex.Civ.App.) 204 S.W. 891; Sovereign Camp, W. O. W., v. Mary Boden, 117 Tex. 229, 1 S.W.(2d) 256, 258, 61 A.L.R. 682. In the case of Sovereign Camp, W. O. W., v. Boden, Eagle, Special Chief Justice, said: "It is clear that the society cannot be permitted to establish, either under the terms of its policies or otherwise, rules of evidence that apply in this state in contravention of our statutes, and hence that

the above provision that absence or disappearance of the member for any length of time shall not be sufficient evidence of the death of such member, would not be enforceable in this state, where article 5541 of our statutes expressly provides otherwise." Some of the leading authorities in other jurisdictions, where a statute similar to article 5541 is in force, and in which the same rule is declared as that announced in the above quotation from Sovereign Camp, W. O. W., v. Boden, supra, are: McCormick v. Woodmen of World, 57 Cal. App. 568, 207 P. 943; Modern Woodmen v. Hurford, 193 Ky. 50, 235 S.W. 24, 21 A. L.R. 1340; Cobble v. Royal Neighbors, 291 Mo. 125, 236 S.W. 306, 21 A.L.R. 1346; Bennett v. Modern Woodmen, 52 Cal.App. 581, 199 P. 343; Samberg v. Knights of Modern Maccabees, 158 Mich. 568, 123 N. W. 25, 133 Am.St.Rep. 396.

The phraseology of the by-laws of the society, which has for its purpose the substitution of a rule as to the presumption of death from the lapse of time, different from the statutory rule, is immaterial. The question always presented is, Does such by-law change, by substitution, the statutory rule as to when the law indulges the presumption of death? If it does, the by-law is void.

We therefore hold that, in the instant case, said paragraph 4 of section 57 of appellee's by-laws, substituting for the statutory presumption of death a period of time based upon the life expectancy of the insured for the statutory period of 7 years, is void, and the terms of article 5541, supra, rule the instant contract of insurance.

■ Appellant has assigned error on the court's finding that a reasonable attorney fee for the prosecution of the suit was $500, for the reason that the only witness who testified as to what would be a reasonable attorney fee placed it at the sum of $750. The court is not bound by this testimony, and could make a finding different from that given by the witness. This assignment of error is overruled.

■ Appellee insists that the period of 4 years' limitation had run on appellant's cause of action, if the trial court's finding that Fred Blanton died about May 21, 1927, be accepted as a fact. While the record discloses that more than the period of 4 years' limitation had run from the date of death, yet by the terms of the policy, the insurance is not payable until 90 days after proof of death is made, and that hence no cause of action accrued in favor of appellant until the expiration of 90 days from the proof of death. This proof of death could not be made until the expiration of 7 years after deceased disappeared. This identical question was held against appellee's contention in the case of Sovereign Camp, W. O. W., v. Boden, supra. Under this authority, we overrule this contention.

It necessarily follows that, in our opinion, the judgment of the trial court should be set aside and judgment here rendered in favor of appellant for the sum of $3,000, plus interest at the rate of 6 per cent. from the time the contract of insurance matured and suit could be filed thereon, until paid, together with the 12 per cent. statutory damages and the further sum of $500, as a reasonable attorney fee, the statutory damages and attorney fee to draw 6 per cent. interest from date of the judgment, and it is so ordered.

Reversed and rendered.

BOND, J., disqualified and not sitting.