## FREE AND ACCEPTED MASONS v. JOHNSON et al.

### No. 1274.

Court of Civil Appeals of Texas. Waco.

Dec. 15, 1932.

George Clark, of Waco, for appellant.

W. C. Taylor, of Waco, for appellees.

GALLAGHER, C. J.

The material facts in this case are uncontroverted. Appellant, Free and Accepted Masons of the State of Texas, is a corporation, duly incorporated under the general laws of this state. It is a fraternal benefit society, operating under the provisions of chapter 8, title 78, of our Revised Statutes. The constitution thereof declares, in substance, that it is a charitable institution and extends its charity or relief to worthy persons and its members in accord with its own fixed laws and rules; that no person except (1) a Master Mason's wife, (2) a Master Mason's child or children, (3) a Master Mason's mother, (4) a Master Mason's unmarried sister, (5) a Master Mason's father, (6) a married sister or brother or other person who cares for a Master Mason in his last illness, shall be recognized as the beneficiary of a dead Master Mason nor be entitled to draw relief benefits on account of his death; that when a Master Mason has no wife, his child or children become his legal beneficiaries. Further provisions in that connection are immaterial in this case. Said constitution further declares, in substance, that the Grand Secretary is vested with authority to issue relief checks in such sums as is required by its laws, (1) to the wife of a Master Mason if she is living; (2) to the legal child or children, if living. Further provisions in such connection are immaterial. Said constitution further provides: "When a Master Mason in good financial standing dies * * * it shall be the duty of the secretary of his lodge to file in the office of the Grand Secretary a sworn statement, signed by five Master Masons, giving the date of death and setting forth when the brother joined the lodge, who his beneficiaries are under the laws of the Grand Lodge; where he died, and whether he was given a decent Masonic burial by the beneficiary and what lodge performed the Masonic ceremonies. If the beneficiary gave the dead Master Mason a decent Masonic burial, it shall be the duty of the Grand Secretary to immediately after receiving said statement * * * to draw a check payable to the order of the beneficiary for $200.00, and send it to the secretary of his lodge, who shall turn it over to the beneficiary, who shall pay all funeral expenses. * * * The $200.00 immediate relief so paid * * * shall be deducted from the total sum of relief funds collected each year from all lodges, and which shall be prorated equally to each dead Mason on the last day's session of the Grand Lodge in June of each and every year, and the balance, if any, paid to the beneficiary, which shall be known as the second payment of relief."

Appellant, on May 17, 1928, and long prior thereto, had a local lodge at Waco known as Union Seal Lodge. Charlie Myart was a member thereof. He died on May 17, 1928. He was at that time in good standing, having paid all dues and assessments required of him. He left surviving him his wife, Mariah Myart. She gave him a decent burial and was paid the first or immediate relief benefit in the sum of $200. She died November 8, 1928. Appellees Emma Johnson, Mary Freeman, and Nancy Bell Hackworth, her sisters, and Wesley Erath and William Erath, her brothers, survived her. They were and are her only lawful heirs. At the time of her death the second relief provided for by the constitution of the order had not been paid nor was the amount thereof definitely known. At the close of the current Masonic year, which expired on May 15, 1929, the amount of the second relief payment was calculated and found to be the sum of $475. A check or draft therefor, payable to Mariah Myart, was sent to the secretary of the local lodge at Waco and was at the direction of the Master of said local lodge turned over to Martha Myart Butler, the daughter of the deceased Charlie Myart by a prior marriage. She indorsed the check with the name of the deceased payee therein and cashed the same. Appellees never received any part of said second payment. They instituted this suit to recover the same.

The case was tried to a jury. Appellant, at the close of the testimony, requested the court to peremptorily instruct a verdict in its favor, which request was refused. The court then instructed the jury peremptorily to return a verdict in favor of appellees for the sum of $475. The jury returned a verdict in accordance with said instruction and the court entered judgment thereon that appellees recover of appellant said sum of $475, with interest thereon at the rate of 6 per cent. per annum from the 1st day of June, 1929, amounting in the aggregate to the sum of $551.

### Opinion.

Appellant assails the action of the court in instructing a verdict against it and

rendering judgment thereon, by various assignments of error. It contends thereunder that upon the death of Mariah Myart, surviving wife of Charlie Myart, deceased member of the order, his daughter, Martha Myart Butler, became, under the terms of its constitution, beneficiary in her stead and entitled to the unpaid remainder of the benefit which accrued by reason of his death. Appellant's constitution provided a benefit on the death of a member, the amount of which was to be determined by dividing the entire benefit fund collected during the Masonic year by the number of members who died during that time. Necessarily, the exact amount to which the beneficiary or beneficiaries of a member would be entitled could not be known until the end of the year, when collections had been completed and the number of members who had died ascertained. Provision, however, was made for the payment of the sum of $200 for the purpose of defraying funeral expenses of the deceased. Before this payment could be lawfully made, the identity and status of the beneficiary of the deceased member had to be proved by the sworn statement of five members of the order. Upon receipt of such statement, the Grand Secretary was required to prepare and execute a check for said amount, make the same payable to the beneficiary, and mail it to the secretary of the local lodge, who was required to deliver the same to such beneficiary. No further proof of the identity or status of the beneficiary or beneficiaries was required, but when at the end of the year the actual amount of the benefit which accrued by reason of the death of the deceased member had been ascertained, the Grand Secretary was required to deduct therefrom the advance payment of $200 and pay the remainder to the beneficiary. The record in this case does not show affirmatively that a sworn statement declaring that Mariah Myart was the wife of the deceased, that she had given him a decent Masonic burial, and was therefore his beneficiary, was prepared and forwarded to the Grand Secretary. It was admitted, however, on the trial of the case that a check in the sum of $200 as the first or immediate payment of relief was issued to her and collected, and that the check for the second payment of such relief was made payable to her, but delivered by the officers of the local lodge to Martha Myart Butler, surviving daughter of the deceased by a prior marriage, indorsed by her in the name of said payee, and cashed on such indorsement. There is nothing in the provisions of appellant's constitution as copied in the record which would authorize a beneficiary of a lower class to be substituted for a beneficiary of a higher class, proved and established as such at the date of the death of a member, because of the subsequent death of such original beneficiary before the second payment of relief was made. Appellant in this connection insists that the provisions of the constitution hereinbefore recited, which declare that relief checks shall be issued to the wife of a Master Mason if living and, if not, to his child or children, should be construed to authorize such substitution. Appellant further insists that the provisions of its constitution which declare that no person, unless he belongs to one of the several classes of beneficiaries enumerated therein, shall be recognized as the beneficiary of a deceased member or entitled to draw relief benefits on account of his death, authorized such substitution and affirmatively excluded appellees from a recovery herein. The rule in this state, as elsewhere, is that the benefits accruing under certificates of membership in fraternal, mutual aid, or benefit associations vest in the beneficiary entitled thereto on accrual, and pass at the death of such beneficiary to his legal representatives or heirs. Central Texas Mutual Life Ass'n v. Beaty (Tex. Civ. App.) 20 S.W.(2d) 836, 837, par. 1 (writ refused), and authorities there cited; Kottmann v. Gazett (Minnesota Odd Fellows Mutual Benefit Society), 66 Minn. 88, 68 N. W. 732 et seq. Appellant's contention that the issue under consideration is controlled by the provision of its constitution that relief checks shall be issued to the wife, if living, and, if not, to the child or children of the deceased, was considered by the Supreme Court of Minnesota in the case last above cited. One Gazett became a member of the order. The certificate of membership issued to him promised "to pay, within sixty days after notice and satisfactory proofs of the death of said brother, made as provided by the by-laws, to Mrs. Fride Gazett, his wife, if living, if not living then to the heirs or assigns of the aforesaid brother, a sum equal to the amount of one dollar for each full member of the society at the time of his death." Gazett died, leaving his wife, Fride, surviving him. Six days thereafter, before any proofs of his death had been furnished to the society, she also died. Both her heirs and the heirs of her deceased husband claimed the benefit which accrued by reason of his death. We quote from the opinion in that case as follows: "The question is: Who are entitled to the money due on the certificate, the heirs of Jacob Gazett or the heirs of his widow, Fride? The answer to this depends upon the language of the contract contained in the certificate; that is, whether the words 'if living' and 'if not living' refer to the date of the death of Gazett, or to the date when the money becomes due and payable, to wit, 60 days after proofs of death are made to the society. Counsel for the defendants contend for a middle ground, to wit, that the words refer to the date when the proofs of death are made; but the language of the certificate leaves no room for any such construction. It refers either to the date of the death of the member, or to the date when the money is payable according to the terms of the contract. We have no doubt that the

words 'if living' and 'if not living' refer to the time of the death of the member, and that the right of the beneficiary became fixed and vested at that date. * * * We hold that the widow's right to the fund became vested at the date of the death of her husband, and that right was not divested by her subsequent death before proofs of death had been made." Since in this case the benefits which accrued by reason of the death of Charlie Myart vested immediately in Mariah Myart, his surviving wife, and passed at her death to her lawful heirs, appellant's further contention that appellees were by the terms of its constitution above recited inhibited from demanding and recovering the same, cannot be sustained. Appellees do not claim to be beneficiaries of Charlie Myart, the deceased Master Mason, nor do they attempt to recover as such. They were, upon the death of Mariah Myart, by virtue of our statutes of descent and distribution, invested with title to the unpaid installment of relief to which she was entitled while living, and they had the right in her place and stead to demand, receive, or recover the same. In addition to the authorities above cited, see Central Texas Mutual Life Ass'n v. Beaty, supra (Tex. Civ. App.) 20 S.W.(2d) 837, 838, par. 4, and statutes and authorities there cited; Estelle Undertaking Co. v. Grand Lodge Colored Knights of Pythias (Tex. Civ. App.) 53 S.W.(2d) 316, 317; National Benevolent Society v. Price (Tex. Civ. App.) 32 S.W. (2d) 683, 685, par. 3; Federal Surety Co. v. Pitts, 119 Tex. 330, 29 S.W.(2d) 1046; Ford v. Grand United Order of Odd Fellows (Tex. Civ. App.) 50 S.W.(2d) 856, 859 et seq., pars. 5, 6 and 7.

Appellant presents assignments of error in which it contends that appellees should not have been permitted to maintain this suit because they failed to allege and prove that there was no administration upon the estate of Mariah Myart, deceased, under whom they claimed as heirs, and no necessity therefor. Appellees alleged, in substance, that appellant was a fraternal benefit society, operating as such under the laws of this state, and on the trial this allegation was admitted to be true. Article 4847 of our Revised Statutes provides, in substance, that no benefit or relief paid or provided by any such society shall be liable to attachment, garnishment, or other process or be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of the beneficiary, either before or after payment. Since the benefit which accrued to Mariah Myart in this case could not be subjected to the payment of her debts, there was no necessity for alleging and proving that there was no administration on her estate and no necessity therefor. Moore v. Lumbermen's Reciprocal Ass'n (Tex. Com. App.) 262 S. W. 472, 473, pars. 2 and 3; Watts v. Gibson (Tex. Civ. App.) 33 S.W.(2d) 777, 780, et seq.

We have considered all appellant's assignments of error and have reached the conclusion that none of them require or justify a reversal of the judgment, and it is therefore affirmed.